The Honorable Robert Thompson State Senator
414 West Court Paragould, Arkansas 72450-4293
Dear Senator Thompson:
I am writing in response to your request for an opinion concerning A.C.A. § 6-17-1204(a), which as you note addresses the calculation of teacher sick leave and provides: "Each school district in the state shall provide sick leave for each of its teachers at a minimum rate of one (1) day per month or major portion thereof that the teacher is contracted, at full pay." Your specific question is as follows:
 For a teacher who receives a contract that has a beginning date of August 17, 2009, and an ending date of June 3, 2010, with additional wording on the contract that states that they must receive an additional seven (7) days of staff development prior to August 17, 2009, how many sick days will this teacher be entitled to for the 2009-2010 school year? The additional seven days can be obtained at any time, at their discretion, from June 1 to their beginning contract date of August 17. June 1 is the date that is set by our educational coop as the beginning date for offering professional development for the upcoming new school year.
RESPONSE
It is my opinion based on the analysis set forth in previous opinions of this office that the teacher under this hypothetical contract is probably entitled to ten (10) *Page 2 
days of sick leave. It should be emphasized, however, that this statute has not been judicially interpreted and legislative clarification may be indicated.
In reaching this conclusion, I have assumed, as an initial matter, that the teacher is compensated under the August 17, 2009 — June 3, 2010 contract for the referenced additional seven days of staff development, notwithstanding the fact that this staff training is to be obtained before August 17.[1] I have thus further assumed that for purposes of sick leave under A.C.A. § 6-17-1204, these seven staff development days are part of the period for which this teacher "is contracted."Id. at (a). The fact that these days apparently are not scheduled within the stated contracted period is in my opinion irrelevant for purposes of section 6-17-1204. Sick leave is calculated based on the "month[s] or major portion thereof that the teacher is contracted," and it appears for the reasons explained above that the teacher in this particular instance is contracted for the months of August, 2009 to June, 2010, and specifically the period August 17, 2009 through June 3, 2010.
In my opinion, the sick leave calculation turns on the proper interpretation of the term "month" under the wording of section 6-17-1204, which provides in full:
 (a) Each school district in the state shall provide sick leave for each of its teachers at a minimum rate of one (1) day per month or major portion thereof that the teacher is contracted, at full pay.
 (b) Such leave shall be in force beginning with the first day of the first school term for which each teacher is employed. *Page 3 
 (c) If a teacher resigns or leaves his or her teaching position for any reason before the end of the school term, the employing school district may deduct from his or her last paycheck full compensation for any days of sick leave used in excess of the number of days earned.
 (d) A teacher shall be entitled to sick leave only for reasons of personal illness or illness in his or her immediate family.
A.C.A. § 6-17-1204 (Rep. 2007) (emphasis added).
Under the facts you describe, involving a contract from August 17, 2009, through June 3, 2010, the teacher is not contracted for the "major portion" of either the thirty-one calendar days in August or the thirty calendar days in June. Viewing these months in isolation, therefore, leads to the conclusion that this teacher is entitled to nine days of sick leave.
As my immediate predecessor aptly observed regarding section 6-17-1204, however, "[s]ome uncertainty may exist . . . as to whether the calculation is properly based only upon calendar months." Op. Att'y Gen. 2006-083 at 3 (opinion enclosed herein). When faced with a similar contract that included portions of two different months which individually did not constitute the "major portion" of either calendar month, [2] another of my predecessors identified the following three possible interpretations of the words "month or major portion thereof" under what is now section 6-17-1204:
 First, it could be argued that the time periods from August 20th to August 31st and June 1st to June 9th are not major portions of a month and not to be included in calculations of sick leave time. Thus, under this approach teachers would accumulate only nine sick leave days for the nine full months worked from September through May.
 A second interpretation would be to combine the time periods from August 20th through August 31st and June 1st through June 9th and come up with 21 days which together could be considered a major *Page 4 
portion of a tenth month. This would entitle school teachers to a tenth day of sick leave.
 The third approach would be to view the first month as running from August 20th until September 20th and continuing in this manner until May 20th. The time period from May 20th to June 9th would obviously constitute a major portion of an additional month entitling teachers to a tenth day of sick leave.
Op. Att'y Gen. 86-553 at 1-2.
It was concluded with regard to the contract period at issue in that opinion that the teacher would be entitled to ten sick leave days. Id. The first interpretation was apparently rejected under those facts as artificially reducing a teacher's entitlement to sick leave. The teacher plainly was entitled to ten days under either the second or the third interpretation.
When discussing this earlier opinion, my immediate predecessor in Opinion 2006-083 noted that the first and third possible interpretations appear consistent with two commonly accepted meanings of the word "month." Op. Att'y Gen. 2006-083 at 5 (citingRandom House Webster's Unabridged Dictionary andParseghian v. Parseghian,206 Ark. 869, 871, 178 S.W.2d 49 (1944).) The second interpretation was deemed less clear. Id. at 6.
I agree with my immediate predecessor's analysis. Although application of a "calendar month" test as described in the first interpretation set out in Opinion 1986-553 would give rise to nine sick leave days for a teacher who is contracted from August 17, 2009 through June 3, 2010, the third interpretation yields a tenth day. Because this interpretation seems consistent with the general concept of a "month," I believe it reasonable follows that the teacher under this scenario is entitled to ten (10) days of sick leave.
It should be emphasized, however, that this conclusion is based upon my interpretation of section 6-17-1204, consistent with previous opinions of this office and in the absence of judicial or legislative clarification of this statute. Such clarification is indicated, in my view. *Page 5 
Deputy Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM:EAW/cyh
[1] State law prescribes minimum teacher compensation levels for a "basic contract" which is defined as "a teacher employment contract for one hundred ninety (190) days that includes then (10) days of professional development[.]" I assume the seven days of staff development referenced in your question are part of these required staff development days and are included in the August 17 — June 3 contract. You have not indicated that these seven days are additional days not covered by the contract and for which the teacher must be paid based on his or her daily rate of pay.See A.C.A. § 6-17-807 (Repl. 2007) (requiring districts to establish a "normal base contract period" and providing: "If a teacher is required to work more days than provided for under the teacher's contract, then the teacher's pay under the contract shall be increased proportionately so that the teacher will receive pay for each additional day the teacher is required to work at no less than the daily rate paid to the teacher under the teacher's contract.") See also A.C.A. § 6-17-705 (Supp. 2009) (regarding certain professional development hours earned at the beginning of the school year, and providing that "no school district shall require certified personnel to work additional days that are not included in their contracts unless the certified personnel are paid their daily rate of pay.")
[2] The question in this earlier opinion involved a contract period of August 20 through June 9.